UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BRADLEY,<br><br>             Plaintiff,<br><br>     vs.<br><br>J. VILLA, et al.,<br><br>             Defendants. | 1:10-cv-01618-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST BE DENIED, AND THAT DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BE GRANTED IN PART, WITH LEAVE TO AMEND<br>(Doc. 29.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.      BACKGROUND**

William Bradley ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on September 8, 2010. (Doc. 1.) This case now proceeds on the Third Amended Complaint filed by Plaintiff on September 14, 2012, against defendant Correctional Officer (C/O) J. Villa for use of excessive force in violation of the Eighth Amendment, and against defendants Sergeant (Sgt.) J. Hightower, Lieutenant (Lt.) S. Henderson, and Captain (Cpt.) Wood (collectively, four "Defendants") for failure to intercede and protect Plaintiff, in violation of the Eighth Amendment. (Doc. 19.)

On October 11, 2013, Defendants filed a motion to dismiss this action for failure to exhaust administrative remedies, and for failure to state a claim under Rule 12(b)(6). (Doc. 29.) On November 25, 2013, Plaintiff filed an opposition to the motion.[1] (Doc. 34.) On December 18, 2013, Defendants filed a reply. (Doc. 38.) Defendants' motion to dismiss is now before the court.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), presently incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California. The events at issue in the operative Third Amended Complaint allegedly occurred at Kern Valley State Prison in Delano, California (KVSP), when Plaintiff was incarcerated there. Plaintiff names as defendants C/O J. Villa, Sgt. J. Hightower, Lt. S. Henderson, and Cpt. Wood. Defendants are all correctional officials employed by the CDCR at KVSP.

The events giving rise to this lawsuit occurred on February 18, 2010. As Plaintiff was walking toward the plaza gate to an appointment at KVSP, C/O Villa stopped Plaintiff and told him to tuck his shirt into his pants. Plaintiff told Villa that he could not comply with the order because of a spinal brace. Plaintiff lifted up his shirt to show C/O Villa the brace. Villa ordered Plaintiff to "[g]o back to your building or cuff it up." (3rd Amd Cmp, Doc. 19 at 5:16-17.) Plaintiff asked to speak to the Sergeant. Villa approached Plaintiff and ordered him to cuff up. Plaintiff told Villa that he had a waist chain chrono.

As Plaintiff attempted to retrieve the chrono from a manila folder, Villa "grabbed Plaintiff's right arm 'aggressively,' Plaintiff then stated 'have medical chrono to substantiate my waist chain chrono.'" (3rd Amd Cmp at 5:23-26.) Villa stepped forward, and at the same time Villa grabbed Plaintiff's right arm and yanked down. "As a result of these actions, Plaintiff fell down, and split his lip, & left side of jaw area (against the concrete), deep

---

[1] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion by Defendants on October 11, 2013. Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003); Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998). (Doc. 29-4.)

abrasions on right hand, severe spinal pain lower region, and deep cuts on knee area, right leg." (3rd Amd Cmp at 6:3-7.)

Plaintiff alleges that while on the ground and offering no resistance, he was hit "three times about the head" by C/O Villa, while Sgt. Hightower, Lt. Henderson, and Cpt. Wood watched. (3rd Amd Cmp at 6:9-10.) Plaintiff yelled for help and for medical care "for being stabbed in the back area with cuffs, causing extreme spinal spasms and pains and discomforts." (3rd Amd Cmp at 6:14-17.) Plaintiff alleges that as a result, he suffered "strained ligaments, and soft tissue damage, active bleeding, on lip & jaw area, abrasion & scratches, and spinal and back pain." (3rd Amd Cmp at 6:18-22.)

### III. MOTION TO DISMISS FOR FAILURE TO EXHAUST

#### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curiam)). In deciding a motion to dismiss for failure to exhaust administrative

remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

The Court takes judicial notice of the fact that the CDCR has an administrative grievance system for prisoner complaints. Cal.Code Regs., tit. 15 § 3084.1. The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). In February 2010, four levels of appeal were involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5 (2009). Appeals were required to be submitted within fifteen working days of the event being appealed, and the process was initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c) (2009). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 85 (2006); McKinney, 311 F.3d. at 1199-1201.

**B.    Defendants' Motion**

Defendants move to dismiss this action on the ground that Plaintiff failed to exhaust the CDCR's administrative appeals process regarding Plaintiff's claims against them. Defendants provide evidence that between February 18, 2010, when Plaintiff's claims originated, and the filing of Plaintiff's Complaint on September 14, 2012, Plaintiff submitted no appeal originating from KVSP that was accepted and decided at the third level of review. (Declaration of J. D. Lozano ("Lozano Decl."), Doc. 29-2 ¶5, Exh. A.) Defendants acknowledge that Plaintiff did submit appeal KVSP-10-00662, concerning the allegations against defendants Villa, Hightower, Wood, and Henderson. (Declaration of Sean Tallerico, Doc. 29-3 ¶4, Exh. B.) That appeal, however, was not exhausted through the Director's Level of review, because Plaintiff did not submit the appeal to the Director's Level until two months after he received the Second Level decision, and the appeal was screened out at the Director's Level because it was not submitted within the applicable fifteen-day deadline. (Lozano Decl. ¶7.)

///

///

**C.      Plaintiff's Opposition**

The Court looks to Plaintiff's four complaints and his opposition filed on November 25, 2013. (Docs. 1, 12, 16, 19, 34.)[2]

In the original Complaint filed on September 8, 2010, Plaintiff states that he filed an inmate grievance on February 18, 2010. (Doc. 1 at 5 ¶18.) On March 22, 2010 and March 28, 2010, Plaintiff wrote to the Warden and Appeals Supervisor, asking why he had not received a response or notice of the assigned log number for the appeal. (Id., Exh. A.) On April 23, 2010, Plaintiff received a response from the Appeals Office indicating that Plaintiff had submitted an appeal duplicating his previous appeal KVSP-0-10-00662. (Id. ¶19, Exhs. C, D.) On May 7, 2010 and May 11, 2010, Plaintiff sent letters to the Appeals Office, Warden, and Director of Corrections asking for a Second Level response to his appeal submitted on February 18, 2010. Plaintiff was interviewed by a correctional lieutenant on April 13, 2010 and received a response from the Appeals Office on May 13, 2010. (Id. at 6 ¶19, 20, Exhs. B, C.) On June 19, 2010, Plaintiff submitted a Request on form GA22 to the Appeals Office, asking for status of appeals KVSP-34-09-14244, KVSP-0-10-00662, and KVSP-0-10-00749. (Id. ¶21, Exh. E.) On June 21, 2010, Plaintiff received documentation from the Appeals Office pertaining to appeal KVSP-10-00749. (Id. ¶22, Exh. F.) On July 9, 2010, Plaintiff sent a letter to the Appeals Office, stating that he finally received their response and copy (instead of the original appeal) of appeal KVSP-0-00-00622 with the Second Level response. (Id. ¶23, Exh. G.) On July 9, 2010, Plaintiff submitted appeal KVSP-0-10-00662 to the Third Level of review and received a response on August 24, 2010, stating that the appeal had been cancelled. (Id. ¶24, Exh. H.) Plaintiff argues that he followed all CDC appeals procedures, rules, and regulations, and made more than a reasonable attempt to exhaust his remedies, but the Appeals Office did not properly respond.

---

[2] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff's four complaints and his opposition of November 25, 2013 all contain Plaintiff's declaration dated June 8, 2010 and signed under penalty of perjury, which is admissible evidence. (Doc. 1 at 51-53; Doc. 12 at 76-78; Doc. 16 at 61-63; Doc. 34 at 22-24.)

1 In the First, Second, and Third Amended Complaints, filed on December 1, 2010, December 8, 2011, and September 15, 2012, respectively, Plaintiff repeated the same statements and arguments discussed above that he made in the original Complaint, with respect to his efforts to exhaust remedies, and resubmitted the same exhibits in support. (Doc. 12 at 5-7, Exhs. A-H; Doc. 16 at 5-7, Exhs. A-H.); Doc. 19 at 7-9, Exhs. A-H.)

In his opposition, filed on November 25, 2013, Plaintiff asserts that he mailed his appeal for Director's Third Level review on July 9, 2010, and the Director's Level returned it on August 24, 2010, refusing to further process it. (Doc. 34 at 5, Exh. H.)

In Plaintiff's declaration of June 8, 2010, which is attached to each of Plaintiff's four complaints and his opposition of November 25, 2013, Plaintiff declares under penalty of perjury that on February 18, 2010, he filed an appeal, which was later assigned log number KVSP-10-00-662, complaining that he had been assaulted by a peace officer, and the Appeals Office did not meet their time limits to respond. (Doc. 34 at 23 ¶6.) Because of the alleged delay, Plaintiff wrote letters to the Appeals Office and Warden, inquiring about his appeal. (Id. ¶7.) When Plaintiff did not timely receive a log number and response from the Appeals Office, he re-submitted three copies of the original appeal on separate dates. (Id. ¶8.) The Appeals Office sent Plaintiff another log number KVSP-0-10-00749, even though the appeal was an exact duplicate of his original appeal, which Plaintiff had made clear. (Id. at 24 ¶9.) On May 18, 2010, Plaintiff sent appeal KVSP-10-00-749 for Third Level review. (Id. at 23 ¶6.) Plaintiff argues that irregularities in the appeals process prevented him from exhausting his remedies.

E. **Discussion**

After thoroughly reviewing the pleadings and exhibits submitted in support of Defendants' motion to dismiss, the Court finds that Defendants have met their burden of raising and proving the absence of exhaustion. Defendants have provided evidence that Plaintiff did not complete the CDCR's appeals process for any appeal addressing the allegations against Defendants in this case, before filing suit. Specifically, Defendants have shown that between February 18, 2010, when Plaintiff's claims originated, and the filing of Plaintiff's Complaint on

September 14, 2012, Plaintiff submitted no appeal originating from KVSP that was accepted and decided at the Third Level of review. (Lozano Decl., Doc. 29-2 ¶5, Exh. A.) Defendants have shown that Plaintiff's appeal KVSP-0-10-00662, which addressed the allegations in this case, was screened out at the Third Level of review because it was submitted too late, ending the appeals process before exhaustion. (Id. ¶7; Declaration of Sean Tallerico, Doc. 29-3 ¶4, Exh. B.)

However, a Third Level response is not necessary to satisfy the exhaustion requirement, and the mere absence of a Third Level response does not entitle Defendants to dismissal. Brown v. Valoff, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available"). As discussed above, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The question now is whether Plaintiff exhausted all of the remedies that were made available to him.

Plaintiff argues that his efforts to exhaust remedies were impeded by the appeals coordinators at the prison, who failed to respond timely to appeal KVSP-0-10-00662. There is no evidence that officials responded untimely to Plaintiff's appeal at the First Level of review. In 2010, prison officials were required to respond to inmate appeals at the First and Second Levels of review within *thirty working days* from the date of *receipt by the appeals coordinator*. Cal.Code Regs., tit. 15 § 3084.8(1),(2) (2010) (emphasis added). Assuming that Plaintiff placed the appeal in the inter-prison mail box on February 18, 2010, and allowing two working days for the appeals coordinator to receive it, prison officials were required to complete their response by April 5, 2010 (*thirty working days later*). Evidence shows that Plaintiff's appeal bypassed the First Level of review and was referred for Second Level determination on March 30, 2010. (Doc. 29-3 at 7.) The appeal was assigned for review, and

///

notice was sent to Plaintiff on April 5, 2010. (Doc. 1 at 17.) Thus the First Level response was not untimely.

At the Second Level of review, however, there is credible evidence that Plaintiff did not receive the response, through no fault of his own, before it was too late for him to proceed to the Third Level of review. On May 7, 2010, Plaintiff sent an inquiry about his Second Level response to the Appeals Office and was informed that the response had been "Cleared & Returned to you on 5-4-10." (Doc. 1 at 20.) On May 11, 2010, Plaintiff sent notice to the Appeals Office that that he still had not received the Second Level response. (Id. at 21.) On May 13, 2010, Plaintiff sent an inquiry to the Warden, informing the Warden that the Second Level response was overdue and he had not received it. (Id. at 25.) On May 16, 2010, Plaintiff sent an inquiry to the Chief of Inmate Appeals in Sacramento, requesting assistance in his efforts to obtain a Second Level response. (Id. at 27.) On June 19, 2010, Plaintiff submitted an Inmate Request at the prison on form GA-22 requesting the status of two of his appeals, including the appeal at issue, and was merely informed that "This appeal was a duplicate and was screened out on 4/23/10," without identifying which of the two appeals had been screened out. (Id. at 36.) On July 8, 2010, Plaintiff sent another inquiry to the Appeals Office, inquiring about the status of three of his appeals, including the appeal at issue. (Id. at 37.) Plaintiff finally received a copy of the Second Level response (dated May 3, 2010) on July 9, 2010, and he immediately mailed it to the Third Level of review, where it was cancelled as untimely.[3] (Id. at 42, 47.)

Based on the foregoing, the court finds that Plaintiff was unable to complete the CDCR's appeals process through no fault of his own. Plaintiff has demonstrated that he diligently attempted to meet his deadlines and, despite his diligence, was unable to submit the appeal to the Third Level of review before his deadline expired. Because Plaintiff was unable

---

[3] The court notes that the copy of the Second Level response received by Plaintiff was altered to correct Plaintiff's prison I.D. number from "C39412" to "E48180," and his location at KVSP to "B1-121L." (Doc. 1 at 43-44.) An incorrect inmate I.D. number and location on the response could have caused it to be erroneously delivered to another inmate, which may explain why Plaintiff did not receive a copy of the response before July 2010.

to obtain a timely Second Level response, administrative remedies were effectively unavailable to him. Defendants have not provided evidence that Plaintiff received a timely Second Level response.

In <u>Sapp v. Kimbrell</u>, the Ninth Circuit used a two-step approach to demonstrate improper screening which renders administrative remedies "effectively unavailable." <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823(9th Cir. 2010). Under <u>Sapp</u>, "[t]he inmate must establish (1) that he actually submitted a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." <u>Id.</u> at 824.

Plaintiff's appeal KVSP-0-10-00662 alleges as follows. On February 18, 2010, Plaintiff was stopped by C/O Villa, who told Plaintiff to tuck his shirt into his pants. (Doc. 29-3 at 9.) Plaintiff replied that he was unable to tuck in his shirt because he was wearing a spinal support system, and lifted up his shirt to show C/O Villa the spinal brace. <u>Id.</u>  C/O Villa responded harshly that Plaintiff was not allowed to pass through the gate until he tucked in his shirt. <u>Id.</u> Plaintiff asked to speak with a sergeant, and C/O Villa said "No!  Go back to your building or cuff it up." <u>Id.</u>  Plaintiff again asked to speak with a sergeant, and C/O Villa approached Plaintiff and got in his face, stating, "Cuff it up!  Put your hands behind your back!" and grabbed Plaintiff's right arm. <u>Id.</u>  Plaintiff loudly informed C/O Villa that he has a "waist chain or double cuff front chrono," and started to retrieve the chrono from his medical folder. <u>Id.</u> C/O Villa forcefully grabbed Plaintiff's right wrist and twisted and slammed him to the pavement on his stomach while Plaintiff shouted that he was being assaulted. <u>Id.</u>  C/O Villa became more aggressive, placed his knee on Plaintiff's back, hit him on the left side of his face, and punched him in the head. <u>Id.</u>  Other officers arrived and joined in the assault. <u>Id.</u>  Officers Lt. Henderson, Sgt. Hightower, and Capt. Wood arrived while Plaintiff lay on the pavement. <u>Id.</u>  Plaintiff shouted that he was disabled and in severe pain, asking for assistance. <u>Id.</u>  Lt. Henderson and Sgt. Hightower responded, "Shut up and calm down!  A little pain won't kill you.  You're a strong boy," and told Plaintiff that medical staff would be there shortly to attend

to his medical problems. Id. The Officers allowed the assault to continue. Id. Plaintiff alleges that the assault, battery, and infliction of pain were not applied in a good-faith effort to maintain order or security, but were applied maliciously and sadistically for the purposes of causing harm and possibly murder. Id. at 10. In the appeal, Plaintiff requests transfer to another institution, an investigation of C/O Villa by Internal Affairs, and monetary damages. Id. at 7.

Based on Plaintiff's allegations in appeal KVSP-0-10-00662, the court finds that the appeal, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that Plaintiff seeks to pursue with this action in federal court. Therefore, based on the foregoing, the court find that Plaintiff has shown that he exhausted all the remedies available to him, and Defendants are not entitled to dismissal of this action based on failure to exhaust administrative remedies.

### IV.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM – RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted). Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A claim is facially

plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. 556).

### A. **Defendants' Motion**

Defendants argue that defendant C/O Villa did not use excessive force against Plaintiff, and at most, any force was *de minimus*. Defendants also argue that defendants Hightower, Henderson, and Wood were not deliberately indifferent to Plaintiff's health and safety.

Plaintiff's allegations against Defendants in the Third Amended Complaint are recited above at ¶II of this order.

#### 1. **Excessive Force – Eighth Amendment Claim**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### Defendants' Position

With respect to Plaintiff's excessive force claim, Defendants argue that defendant C/O Villa's conduct was a mere *de minimus* use of force. Defendants cite cases in which courts found that (1) a single blow to the back of the head while a prisoner was handcuffed during a transport, requiring only treatment by a non-prescription medication, did not constitute excessive force;[4] (2) striking plaintiff in the back of the neck and kicking his ankle is a mere *de minimus* use of force;[5] (3) hitting an inmate in the back because he is not moving fast enough does not amount to a violation of the Eighth Amendment;[6] and (4) allegations of bumping, grabbing, elbowing, and pushing plaintiff do not approach an Eighth Amendment claim.[7] Defendants argue that Plaintiff mischaracterized defendant Villa's grabbing of his arm as an "attack," and that defendant Villa merely grabbed Plaintiff's arm as he was reaching into his manila folder, in order to prevent any possible perceived assault on correctional staff. In addition, Defendants argue that Plaintiff's alleged injuries from the fall were not readily apparent.

### Plaintiff's Position

In his opposition, Plaintiff argues that defendant C/O Villa used excessive force in violation of the Eighth Amendment because during the incident at issue, Plaintiff was not a

---

[4] Olson v. Coleman, 804 Supp. 148, 150 (D. Kansas 1992).

[5] Jackson v. D. D. Hurley, 1993 U.S. Dist. LEXIS 16954 (N.D. Cal. Nov. 24, 1993).

[6] Turner v. Contra Costa Cnty., 1997 U.S. Dist. LEXIS 21512 (N.D. Cal. Nov. 6, 1997).

[7] Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997.)

threat to defendant, defendant knew Plaintiff was extremely disabled, and defendant "yanked him down with force," causing Plaintiff to fall to the pavement, splitting his lip, causing Plaintiff to suffer "deep abrasions. ., . . severe lower spinal pains, and deep cuts on [his] knee area and right leg, while on [the] ground with [cuffs forced] in [his] back area." (Opp'n, Doc. 34 at 7-8.) Plaintiff also alleges that he was hit three or four times about the head by defendant Villa. (Id. at 8.) Plaintiff alleges that he was forced to remain on the pavement on his stomach, cuffed in back, for at least 45 minutes, causing him to suffer excruciating pain. (Id.)

### Discussion

The court looks to Plaintiff's allegations in the Third Amended Complaint, taking as true any of Plaintiff's well-pleaded factual allegations. Plaintiff alleges that when he was unable to comply with Villa's order to tuck in his shirt, Villa aggressively "yanked down" on his arm, causing him to fall to the pavement, splitting his lip and causing "deep abrasions" on his right hand, "severe spinal pain," and "deep cuts" on his knee. (3rd Amd Cmp at 6:3-7.) Even if defendant Villa grabbed Plaintiff to prevent an assault on correctional staff, there appears no justification for defendant Villa hitting Plaintiff three times in the head after he was prone on the pavement. Once Plaintiff was on the ground, cuffed behind his back and offering no resistance, there was no need to apply force to restore discipline. Defendants' argument that Plaintiff's alleged injuries from the fall were not readily apparent is not persuasive. The Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries. Hudson, 503 U.S. at 8. Therefore, the court finds that Plaintiff states a cognizable claim in the Third Amended Complaint against defendant C/O Villa for use of excessive force.

### 2. Failure to Protect – Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates

from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" Id. at 843 (*citing* Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37. An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

**Defendants' Position**

Defendants argue that Plaintiff's allegation that defendants Hightower, Wood, and Henderson "ignored Plaintiff's cry and anguish which he expressed loudly and agonizingly clear" is not enough to show that the defendants were deliberately indifferent. Defendants argue that Plaintiff's statement is vague and amounts to nothing more than baseless speculation. Defendants also argue that Plaintiff's complaint is devoid of any allegations that the officers were aware of and disregarded any excessive risk to Plaintiff's safety. Defendants argue that

Plaintiff's allegation that the defendants were present in the vicinity of the alleged incident of *de minimus* force, alone, does not demonstrate that they knew of an excessive risk to Plaintiff's safety.

### Plaintiff's Position

In opposition, Plaintiff argues that defendants Hightower, Wood, and Henderson (Supervisory Officers) were present when he was beaten by C/O Villa and when he was on the ground and on a stretcher, shouting that he was in excruciating pain and has a spinal disc disorder.

### Discussion

The court again looks to Plaintiff's allegations in the Third Amended Complaint, taking as true any of Plaintiff's well-pleaded factual allegations. Plaintiff alleges that defendants Hightower, Wood, and Henderson were present when C/O Villa hit Plaintiff three times about the head when Plaintiff was cuffed and prone on the pavement, and they stood by and watched while Plaintiff suffered and yelled for help.

Plaintiff's allegation that the Supervisory Officers watched while defendant Villa hit Plaintiff three times on the head is sufficient to show that they were aware of a risk of harm to Plaintiff. However, Plaintiff has not alleged facts showing that the risk of harm was excessive. Plaintiff does not describe the forcefulness of the blows to his head or the injuries caused by the blows. Moreover, Plaintiff's allegation that the officers failed to step in and stop the attack, or assist him when he lay in pain on the ground, is not sufficient to show they deliberately disregarded a risk to his health or safety. Plaintiff also fails to allege sufficient facts showing that the officers had a realistic opportunity to intercede during the assault. Plaintiff has not described whether the three blows were in quick succession, or would have allowed the Supervisory Officers an opportunity to intercede before the assault was over.

Based on the foregoing, the court finds that Plaintiff fails to allege sufficient facts to state a claim against defendants Hightower, Wood, and Henderson for failing to protect him in violation of the Eighth Amendment.

///

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" Therefore, the court should provide Plaintiff with a choice to either proceed only with the excessive force claim against defendant Villa, or file a Second Amended Complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

## IV. CONCLUSION AND RECOMMENDATION

The court finds that Defendants have met their burden of demonstrating that Plaintiff failed to complete the CDCR's appeals process and therefore failed to exhaust his administrative remedies prior to filing suit, in compliance with § 1997e(a). However, the court finds that Plaintiff has shown that he exhausted all the remedies *available to him*. Therefore, Defendants are not entitled to dismissal of this action, and the motion to dismiss for failure to exhaust should be denied.

In addition, the court finds that Plaintiff states a cognizable claim against defendant Villa for use of excessive force in violation of the Eighth Amendment, but fails to state a claim against defendants Hightower, Wood, and Henderson for failing to protect him in violation of the Eighth Amendment. Therefore, Defendants are entitled to dismissal of defendants Hightower, Wood, and Henderson, with leave to amend.

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss for failure to exhaust remedies be DENIED;
2. Defendants' motion to dismiss for failure to state a claim be GRANTED IN PART;
3. Defendants' motion to dismiss the claims against defendant Villa be DENIED;
4. Defendants' motion to dismiss the claims against defendants Hightower, Wood, and Henderson be GRANTED, with leave to amend; and
5. Plaintiff be granted a choice to either (1) proceed only with the excessive force claim against defendant Villa, or (2) file a Fourth Amended Complaint curing the deficiencies found in the Third Amended Complaint.

///

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 3, 2014**                                **/s/ Gary S. Austin**
                                                                            UNITED STATES MAGISTRATE JUDGE